IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | CRIMINAL NO. 11-100 |
| | : | |
| WAYNE WATERS | : | |

## MEMORANDUM

**Padova, J.**                                                                                     **July 14, 2011**

Indictment No. 11-100 charges Defendant with distribution of cocaine base ("crack cocaine") in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C) (Count I); possession of crack cocaine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C) (Count II); possession of 32 grams of crack cocaine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B) (Count III); and possession of firearms and ammunition, namely two Heckler & Koch .45 caliber semiautomatic pistols, one loaded with seven live rounds of ammunition, the other loaded with eight live rounds of ammunition, and an additional 15 rounds of .45 caliber ammunition, in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1).

Defendant has filed a Motion to Suppress evidence seized from his home pursuant to a warrant on the ground that the affidavit of probable cause supporting the warrant falsely and misleadingly omitted material information. See Franks v. Delaware, 438 U.S. 154 (1978). On June 7, 2011, we held argument on Defendant's Motion and granted the request for a Franks Hearing contained therein. We held the Franks Hearing on June 7 and 8, 2011. We have considered the evidence presented and the arguments made by counsel on June 7 and 8 and in the Motion and memoranda of law. For the reasons that follow, the Motion to Suppress is denied.

## I.      BACKGROUND

The Defendant was arrested on March 10, 2010.  After his arrest, Philadelphia police officers searched his home, located at 1915 South Norwood Street, Philadelphia, Pennsylvania, and seized, among other things, the drugs and firearms that are the subject of Indictment No. 11-100. According to the Government, the officers conducted the search pursuant to a properly issued warrant.  According to Defendant, the officers conducted the search before applying for the warrant, moved evidence (a shoe box, plate and a bag) from a second-floor bedroom closet to the dining room table on the first floor of the house, and then procured the warrant and removed the evidence from the house.  The Government does not dispute that police officers entered 1915 South Norwood Street before they applied for the warrant, but maintains that the police officers did not conduct the search that resulted in the seizure until after the warrant was issued.

### A.      The Warrant

The warrant authorizing the search of 1915 South Norwood Street was signed by the issuing magistrate at 9:05 p.m. on March 10, 2010.  (Warrant at 1.)  The affidavit of probable cause, which was signed by Philadelphia Police Officer Kapusniak, contains the following information:

1.      At 2:45 p.m. on March 10, 2010, Officer Kapusniak and Officer Kelly went to the 1900 block of South Norwood Street to investigate illegal sales of narcotics and weapons offenses.  (Aff. at 1.)

2.      At 3:00 p.m., Officer Kapusniak observed a black male (Theodore Wright) approach 1915 South Norwood Street and another black male (Wayne Waters) exit the house and meet Wright on the porch.  Wright handed United States currency to Waters who then handed small dark colored items to Wright.  Wright left the property and walked

north on Norwood Street, then east on Mifflin Street.  Philadelphia Police Officer
Schaffling stopped Wright on South 21st Street and recovered from him two black
tinted packets each containing crack cocaine.  (Id.)

3.      At 3:25 p.m., a black female approached 1915 South Norwood Street while she was
using a cell phone.  Waters exited the house, also using a cell phone.  The black
female handed Waters United States currency and he dropped small dark colored
items into her hand.  She left the property, walked south on Norwood Street, and was
seen entering 2113 McKean Street.  (Id.)

4.      At 4:10 p.m. a black male (Arnold Mercer), approached 1915 South Norwood Street
and stood outside the property using a cell phone.  Waters then exited the house, also
using a cell phone.  Mercer handed Waters United States currency and Waters handed
Mercer small dark colored items.  Mercer left the property and walked south on
Norwood Street, then east on McKean Street.  Police officers stopped Mercer on
McKean Street and recovered from him a cell phone and two black tinted packets
each containing crack cocaine.  (Id.)

5.      Waters left 1915 South Norwood Street at 4:20 p.m and walked to 2113 McKean
Street, where he was stopped by Philadelphia Police Officer Aponte, who recovered
the following items from him: three black tinted packets each containing crack
cocaine, $132, one set of keys, and two cell phones.  (Id.)

6.      Police Officers were then directed to secure 1915 South Norwood Street pending
application for a search and seizure warrant.  (Id. at 1-2.)

According to the warrant, the search took place at 9:30 p.m. on March 10, 2010, and the police

3

seized narcotics, money, guns, paraphernalia, and proof of residence.  (Id.)

      B.    The Franks Hearing

On June 7, 2011, prior to hearing the testimony of any witnesses, we held argument on the threshhold issue of whether Defendant was entitled to a Franks Hearing.[1]   Defendant based his request for a Franks Hearing on the ground that the affidavit of probable cause falsely and misleadingly omitted the material fact that the search of 1915 South Norwood Street and the seizure of the narcotics, money, guns, paraphernalia, and proof of residence had already occurred by the time the police obtained the warrant.  In support of his request, Defendant supplied the sworn affidavits of two witnesses, Jovana Gardner and Ti-Juine Waters, both of whom averred that the police searched and seized evidence from 1915 South Norwood Street prior to the time the warrant was issued by the magistrate.  We concluded, based on the sworn affidavits, that Defendant had made a "substantial preliminary showing" that the affidavit of probable cause supporting the search

---

[1]In order to overcome "the general presumption that an affidavit of probable cause supporting a search warrant is valid[,]" the defendant must first "make a 'substantial preliminary showing' that the affidavit contained a false statement, which was made knowingly or with reckless disregard for the truth, which is material to the finding of probable cause."  United States v. Yusuf, 461 F.3d 374, 383 (3d Cir. 2006) (quoting Franks, 438 U.S. at 170).  If the defendant makes this showing, he is entitled to a Franks Hearing.  The United States Court of Appeals for the Third Circuit has stated the standard for obtaining a Franks Hearing as follows:

> To meet this threshold, a challenger must present more than conclusory statements that the affidavit contains false statements or omissions.  Franks, 438 U.S. at 171; Yusuf, 461 F.3d at 383 n.8.  The challenger must specifically identify allegedly false statements or omissions in the affidavit and provide a statement of reasons supporting the argument.  Franks, 438 U.S. at 171.  The challenger must also provide an offer of proof or give a satisfactory explanation for the absence of proof.  Id.  Sworn affidavits or reliable statements from witnesses are examples of offers of proof sufficient to satisfy the substantial preliminary showing.  Id.; Yusuf, 461 F.3d at 383 n.8.

United States v. Heilman, 377 F. App'x 157, 177 (3d Cir. 2010).

warrant had falsely and misleadingly omitted material information.  See Franks, 438 U.S. 154.
Accordingly, we granted Defendant's request for a Franks Hearing.

Defendant called three witnesses during the Franks hearing:  Philadelphia Police Sergeant
Edward Hayes; Defendant's neighbor, Sharona Terry; and Defendant's sister, Ti-Juine Waters.  All
three witnesses testified regarding their observations of the actions taken by Philadelphia police
officers at 1915 South Norwood Street on March 10, 2010 from Defendant's arrest at approximately
4:20 p.m. until the search of that house conducted pursuant to the warrant, which occurred at
approximately 9:30 p.m.

1.    Sergeant Hayes

On March 10, 2010, Sgt. Hayes, who was assigned to the Narcotics Strike Force South,
supervised surveillance teams in south Philadelphia, including the team of  Officer Kapusniak and
Officer Kelly, who were conducting surveillance on the 1900 block of Norwood Street.  (Id. at 30-
32.)  As a result of Officers Kapusniak's and Kelly's surveillance, Waters was arrested around 4:20
p.m., around the corner from 1915 South Norwood Street.  (Id. at 36.)  Sgt. Hayes and seven to eight
other police officers then went to 1915 South Norwood Street to conduct a sweep of the house.  (Id.
at 37.)  They entered the house around 4:30 p.m., to  "secure the property, to make sure that there
were not other people inside or any evidence from the drug dealing was being destroyed."  (Id. at 38,
48.)  The police officers conducted a systematic sweep of the house, going into each room to ensure
that there was no one in the house.  (Id. at 38-39.)  Sgt. Hayes does not recall seeing any drugs,
firearms or other contraband out in plain view.  (Id. at 40-41.)

During the five hours between the initial sweep of 1915 South Norwood Street and the time
the search warrant was executed at 9:30 p.m., Sgt. Hayes stationed six officers in the house: "two

5

in the downstairs living room, two in the kitchen and two upstairs." (Id. at 48.) He also stationed a few officers in the street. (Id.)

Defendant's mother came to the house while the police officers were waiting for the warrant to arrive. (Id. at 54.) She identified herself and asked if she could retrieve her husband's medicine from the home. (Id.) Sgt. Hayes directed one of the police officers inside the house to get the medicine and give it to her. (Id.) He does not recall anyone other than police personnel entering the house from the time the police secured it until after the search warrant was executed. (Id. at 62.) Sgt. Hayes also did not recall police officers collecting and placing items, including a shoebox, on the dining room table before the search warrant was executed. (Id. at 57).

Officers Kapusniak and Kelly were not present in the house at 1915 South Norwood Street during the initial sweep or during the waiting period before they obtained the search warrant. (Id. at 52-53, 55.) They left Norwood Street shortly after Defendant was arrested and returned to the police station "to type paperwork and apply for the search warrant." (Id. at 52-53.) They returned to Norwood Street with the search warrant at 9:30 p.m., at which time the police officers searched the property. (Id. at 41.) The search included looking in drawers, under mattresses, anywhere that narcotics or weapons or money could be hidden. (Id.) During the 9:30 p.m. search, Officer Kelly took a silver sneaker box out of a rear bedroom closet. (Id. at 45.) The sneaker box contained the following items: "one clear plastic bagg[ie] which contained a large chunk and one clear bagg[ie] with a smaller chunk of alleged crack cocaine, 38 grams; one glass plate with white residue; $1,205 [United States currency]; numerous new and unused packaging, razor blades, one digital scale." (Id.) Officer Cuttehey recovered two .45 caliber handguns; one was found in a lockbox (which was opened with a key found on Defendant upon his arrest) and was loaded with seven live rounds of

6

ammunition; the other was found in a dresser drawer, and was loaded with eight live rounds of ammunition. (Id.) Officer Cuttehey also found two boxes of .45 caliber ammunition in the dresser. (Id.) Officer McCauley took a black key case and an identification card with the Defendant's name and address from the downstairs closet in the living room. (Id. at 46.) The key case contained 15 black-tinted packets, each containing alleged crack cocaine. (Id.) He also recovered a "clear plastic bagg[ie] containing seven green-tinted packets, each containing . . . alleged crack cocaine" from the downstairs closet. (Id.) Officer Schaefly took additional firearms from the front bedroom. (Id.)

      2.   <u>Sharona Terry</u>

On March 10, 2010, Ms. Terry lived directly across the street from 1915 South Norwood Street. (Id. at 63-64.) She has known the Defendant for over 15 years. (Id. at 65-66.) Norwood Street is so narrow that Ms. Terry is able to see into the house at 1915 South Norwood Street from her front porch. (Id. at 64-65, 67.) On March 2010, between 4:30 p.m. and 5:00 p.m., she saw one police officer stationed outside of 1915 South Norwood Street, two police officers go to the second floor of the house, and three or four officers going in and out of the house. (Id. at 67.) At some time between 5:00 p.m. and 5:30 p.m., she saw the Defendant's sister go into the house. (Id. at 68-69.) Around 9:30 p.m., she saw a car drive up and a police officer get out of the car. (Id. at 79.) The police officer stood in front of 1915 South Norwood Street, held up a white piece of paper, and said, "I have it." (Id. at 69-70, 79.) Immediately thereafter, she saw more police officers enter 1915 South Norwood Street and begin "rummaging" through the house. (Id. at 70, 79.)

      3.   <u>Ti-Juine Waters</u>

On March 10, 2010, around 4:30 p.m., Ms. Waters received several phone calls from her friends, letting her know that there were police officers at her parents' house. (6/8/11 N.T. at 5-7.)

She drove to her parents' house, where she found police officers in the house, on the porch and on the pavement.  (Id. at 5, 7-8.)  Her parents arrived about ten minutes later. (Id. at 8.)  Ms. Waters and her parents tried to go inside the house, but the police officers would not allow them inside.  (Id. at 9.)  Around 5:30 p.m., Ms. Waters asked the police officers to get medication for her father and diapers and a jacket for her one-year-old daughter, who was also present.  (Id. at 11-12.)  The officer brought her the medication, but did not find the jacket, so he allowed Ms. Waters to go inside the house to get her daughter's jacket.  (Id. at 13-14.)  Once she was inside the house, Ms. Waters saw "a sneaker box on the [dining room] table, a clear plate sitting on top of that, a - - a bag on top of the plate, and a few things in the plate."  (Id. at 14; see also id. at 28.)  The things on the plate may have been baggies and drugs.  (Id. at 14.)  Ms. Waters left Norwood Street with her parents about an hour later.  (Id. at 17.)

## II.    LEGAL STANDARD

"The Warrant Clause of the Fourth Amendment to the United States Constitution provides in pertinent part that 'no Warrants shall issue but upon probable cause, supported by Oath or affirmation.'" United States v. Yusuf, 461 F.3d 374, 383 (3d Cir. 2006) (quoting U.S. Const. amend. IV).  "In Franks, the Supreme Court determined that a criminal defendant has the right to challenge the truthfulness of factual statements made in an affidavit of probable cause supporting a warrant subsequent to the ex parte issuance of the warrant." Id.  In order to succeed on a motion to suppress made pursuant to Franks, a defendant must prove by a preponderance of evidence:  "(1) that the affiant knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create a falsehood in applying for a warrant; and (2) that such statements or omissions were material, or necessary, to the probable cause determination."  Id. (citing Sherwood

v. Mulvihill, 113 F.3d 396, 399 (3d Cir. 1997)).  The Third Circuit has explained that "'[O]missions are made with reckless disregard for the truth when an officer recklessly omits facts that any reasonable person would know that a judge would want to know' in making a probable cause determination."  Reedy v. Evanson, 615 F.3d 197, 213 (3d Cir. 2010) (alteration in original) (quoting Wilson v. Russo, 212 F.3d 781, 783 (3d Cir. 2000)).

If the defendant is able to satisfy this burden, the court corrects the affidavit of probable cause by excising any false statements from the affidavit and/or adding any omitted information to the affidavit.  Yusuf, 461 F.3d at 384 (citing Sherwood, 113 F.3d at 400).  If the defendant is able to "prove by a preponderance of the evidence that probable cause does not exist under the corrected affidavit, i.e., that the deficiency in the affidavit was material to the original probable cause finding[,]" Yusuf, 461 F.3d at 383 (citing Wilson, 212 F.3d at 788), "'the Fourth Amendment requires that . . . the fruits of the search [must be] excluded to the same extent as if probable case was lacking on the face of the affidavit.'"  Id. at 384 (alterations in original) (quoting United States v. Frost, 999 F.2d 737, 743 (3d Cir. 1993)) .

## III.   DISCUSSION

As we discussed above, Defendant has the burden of proving, by a preponderance of the evidence, that Police Officer Kapusniak "knowingly and deliberately, or with a reckless disregard for the truth" made an omission in his affidavit of probable cause that was "material, or necessary, to the probable cause determination."  Yusuf, 461 F.3d at 383 (citing Sherwood, 113 F.3d at 399 ).  Defendant has not satisfied this burden.  We find credible Sgt. Hayes's testimony that the search of 1915 South Norwood Street that resulted in the seizure of the items listed on the search warrant (narcotics, money, guns, paraphernalia, and proof of residence) took place at 9:30 p.m. on March 10,

2010, pursuant to the search warrant obtained by Officers Kapusniak and Kelly.  We also find credible Sgt. Hayes's testimony regarding the locations inside the house where the police officers found the items they seized as well as his testimony concerning the identities of the police officers who found that evidence.  Specifically, we find credible Sgt. Hayes's testimony that Officer Kelly, who did not arrive at 1915 South Norwood Street until 9:30 p.m., found the silver sneaker box that contained 38 grams of crack cocaine in a rear bedroom closet on the second floor of the house during the search pursuant to the search warrant that he and Officer Kapusniak had obtained from the magistrate at 9:05 p.m.  (6/7/11 N.T. at 45.)  We conclude, accordingly, that Officer Kapusniak did not omit from his affidavit of probable cause any material information regarding the alleged seizure of evidence during the police officers' 4:30 p.m. sweep of the house.

Even if we did not find Sgt. Hayes' testimony to be credible, Defendant still would not prevail on his Motion to Suppress.  While Defendant did present some evidence that the police officers stationed at 1915 South Norwood Street searched the house prior to 5:30 p.m. and seized a shoe box, a plate, a bag, and possibly baggies and drugs, that evidence would not be sufficient to satisfy Defendant's burden of proving that Officer Kapusniak had omitted material information from the affidavit of probable cause because the omitted information was neither "'material, [n]or necessary, to the probable cause determination.'"  See United States v. Yokshan, 658 F. Supp. 2d 654, 660 (E.D. Pa. 2009) (quoting Yusuf, 461 F.3d at 383).

The magistrate's role in deciding whether there is probable cause to issue a search warrant, is to "'make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place.'"   United States v. Vosburgh, 602 F.3d 512, 526 (3d Cir. 2010)

10

(alteration in original) (quoting <u>Illinois v. Gates</u>, 462 U.S. 213, 238-39 (1983)).  The Third Circuit has explained that, when a warrant is sought for the search of the residence of a person who has been arrested, "direct evidence linking the residence to criminal activity is not required to establish probable cause."  <u>United States v. Burton</u>, 288 F.3d 91, 103 (3d Cir. 2002) (citations omitted). "Instead, probable cause to search can be based on an accumulation of circumstantial evidence that together indicates a fair probability of the presence of contraband at the home of the arrested."  <u>Id.</u>

In this case, the affidavit of probable cause states that police officers observed Defendant leave the house at 1915 South Norwood Street three times in 70 minutes.  (Aff. at 1.) In each instance, he handed small dark colored items to an individual who gave him United States currency. (<u>Id.</u>)  In two instances, both the Defendant and the individual to whom he handed the small dark colored items were using cell phones.  (<u>Id.</u>)  Philadelphia police officers stopped two of the individuals to whom Defendant handed the small dark colored items and found each of them to have two black tinted packets containing crack cocaine.  (<u>Id.</u>)  When police stopped Defendant on McKean Street, they found him to be carrying three black tinted packets containing crack cocaine, $132, and two cell phones.  (<u>Id.</u> at 2.)  Based upon these statements, we conclude that the affidavit established probable cause to conclude that contraband or other evidence of a crime would be found in 1915 South Norwood Street.  We further conclude that adding to the affidavit a statement that the police had gone into 1915 South Norwood Street and seized items that might contain or constitute contraband or evidence of a crime (the shoebox, a bag, a plate, and other items that might be baggies or drugs), would not have obviated the fact that probable cause to search 1915 South Norwood Street existed before any police officers entered the house.

At the Hearing, Defendant asserted that "had [the officers] gone to the magistrate, the neutral

magistrate and said to [him], well, we're asking you for a search warrant, but this is really just backfill because we've already done the search, we already secured the things, my suggestion is that they would not have gotten the search warrant."  (6/7/11 N.T. at 7.)  Defendant has offered no support for the contention that an affidavit that both establishes probable cause and reveals the occurrence of an earlier warrantless search and seizure may not support the issuance of a search warrant.  To the contrary, the magistrate's task was simply to determine whether the affidavit established probable cause.  Vosburgh, 602 F.3d at 526 (citation omitted).  Our inquiry, similarly, is to determine whether a corrected and complete affidavit would have established probable cause. Yusuf, 461 F.3d at 384 (citation omitted).  We conclude that it would have.

Thus, Defendant has not proven the existence of the alleged omission by a preponderance of the evidence and also has not proven that the alleged omission was "'material, or necessary, to the probable cause determination.'"  Yokshan, 658 F. Supp. 2d at 660 (quoting Yusuf, 461 F.3d at 383).[2]  The Motion to Suppress is, accordingly, denied.

---

[2]To the extent that Defendant did not intent to rely on the Franks framework in connection with the Motion to Suppress, and actually meant to argue that the items Ms. Waters claims to have seen on the dining room table around 5:30 p.m. (the shoebox, plate and bag) should be suppressed because they were seized before the police obtained the search warrant, and were thus the fruits of an illegal warrantless search, the Motion to Suppress would still be denied.  Sgt. Hayes testified that the 9:30 p.m. search of the house was extensive and thorough, involving opening and looking inside drawers, looking under mattresses, and looking inside closets.  (6/7/11 N.T. at 41, 45-46.)  We conclude, accordingly, that even if Ms. Waters' testimony that the shoebox and other items had been seized before the search warrant was obtained is truthful, and Sgt. Hayes' testimony that those items were seized during the 9:30 p.m. search was not truthful, these items would have been found by the police in the rear bedroom closet during the search conducted at 9:30 p.m. pursuant to the search warrant.  These items would, therefore, be admissible pursuant to the inevitable discovery doctrine. See United States v. Sinkler, 267 F. App'x 171, 172 n.1 (3d Cir. 2008) ("The inevitable discovery doctrine provides that 'if the government can prove that the evidence would have been obtained inevitably and, therefore, would have been admitted regardless of any overreaching by the police, there is no rational basis to keep that evidence from the jury in order to ensure the fairness of the trial proceedings.'" (quoting Nix v. Williams, 467 U.S. 431, 447 (1984)).

IV.     **CONCLUSION**

Based upon the evidence presented by Defendant in his Motion and during the <u>Franks</u> Hearing, we conclude that he has not satisfied his burden of proving by a preponderance of the evidence that Police Officer Kapusniak omitted material information from the affidavit of probable cause made in support of the warrant issued on March 10, 2010 for the search of 1915 South Norwood Street.  Defendant's Motion to Suppress is, therefore, denied.  An appropriate Order follows.

                                        BY THE COURT:


                                        ___S/ JOHN R. PADOVA_____
                                        John R. Padova, J.

13