IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CIVIL ACTION NO. 13-115 |
| | : | |
| v. | : | |
| | : | |
| WAYNE WATERS | : | CRIMINAL ACTION NO. 11-100 |

**MEMORANDUM**

**Padova, J.**                                                                                                    **July 31, 2013**

Before the Court is Wayne Waters's Motion to Vacate, Set Aside or Correct Sentence

pursuant to 28 U.S.C. § 2255. We held an evidentiary hearing on the Motion on June 5, 2013.

For the following reasons, the Motion is denied.

## I.      BACKGROUND

Waters was arrested on March 10, 2010 by officers of the Philadelphia Police Department

Narcotics Strike Force South who had been engaged in surveillance on the 1900 block of South

Norwood Street in Philadelphia, Pennsylvania. (6/7/11 Hr'g Tr. at 32, 36, 65-66.) The Strike

Force officers witnessed Waters selling crack cocaine to three individuals from his home at 1915

South Norwood Street. (Id. at 35, 50.) Other Strike Force officers stopped two of these

individuals and seized two packets of crack cocaine from each of them. (Search Warrant at 2.)

After Waters left his home later that afternoon, he was arrested by members of the Strike Force,

who seized three packets of crack cocaine, a set of keys, two cell phones, and $132 from him.

(6/7/11 Hr'g Tr. at 35-36, Search Warrant at 2.) The Strike Force officers subsequently obtained

a search warrant for Waters's house and searched it later that evening. (6/7/11 Hr'g Tr. at 41,

45.) They seized additional crack cocaine, two Heckler & Koch .45 semiautomatic pistols,

ammunition, and other items from the house. (Id. at 45-46, 58-59.) The Strike Force officers

seized a total of 32.8 grams of crack cocaine in connection with Waters's arrest, including the

packets of crack cocaine they seized from the two purchasers.  (PSI ¶ 15.)

After his arrest, Waters was charged by the Commonwealth of Pennsylvania with manufacture/delivery/possession with intent to manufacture or deliver a controlled substance, in violation of 35 Pa. Stat. Ann. § 780-113; intentional possession of a controlled substance by a person not registered under the Pennsylvania Drug and Alcohol Abuse Control Act, in violation of 35 Pa. Stat. Ann. § 780-113; use or possession with intent to use drug paraphernalia, in violation of 35 Pa. Stat. Ann. § 780-113; possession of an instrument of crime in violation of 18 Pa. Cons. Stat. Ann. § 907; and carrying a firearm on public streets in Philadelphia in violation of to 18 Pa. Cons. Stat. Ann. § 6108.  Commonwealth v. Waters, No. CP-51-CR-0003471-2010, docket (Phila. Cnty. Court of Common Pleas).  Waters was arraigned on these charges on April 7, 2010.  Id.  A pre-trial conference was scheduled in his case for May 13, 2010, but was continued until May 20, 2010.  His trial was originally scheduled for January 13, 2011, but was continued three times.  Id.

In early 2011, Waters was indicted by a federal grand jury, which charged him with violation of federal laws arising from the activities underlying his March 10, 2010 arrest. Specifically, Indictment No. 11-100 charged Waters with distribution of a mixture and substance containing cocaine base ("crack") in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C) (Count I); possession of a mixture and substance containing crack with intent to distribute, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C) (Count II); possession of 32 grams of a mixture and substance containing crack with intent to distribute, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B) (Count III); and possession of two Heckler & Koch .45 caliber semiautomatic pistols, and .45 caliber ammunition, in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1) (Count IV).  (Docket No. 1.)  The Indictment was unsealed on February 28, 2011 and Waters

was arrested by federal authorities and had his initial appearance in federal court that same day. (Docket Nos. 4, 6.)  On July 13, 2011, nearly five months after Waters was arrested and arraigned on the federal charges arising from his March 10, 2010 arrest, the Commonwealth of Pennsylvania *nolle prosequied* its charges against him.  Commonwealth v. Waters, No. CP-51-CR-0003471-2010, docket.

On May 18, 2011, Waters filed a Motion for a Franks Hearing and Motion to Suppress Evidence in this Court, seeking the suppression of the evidence seized from his home by the Task Force officers.  (Docket No. 19.)  On June 7, 2011, we held argument on and granted the Motion for a Franks Hearing.  (7/14/11 Mem. at 1.)  We held the Franks Hearing on June 7 and 8, 2011.  (Id.)  We denied the Motion to Suppress on July 14, 2011.  (Id.)

On September 28, 2011, we accepted Waters's plea of guilty to all four counts of Indictment No. 11-100.  (Docket No. 39.)  We sentenced Waters on January 9, 2012, to sixty months of imprisonment on each of Counts I, II, and III, to be served concurrently, and sixty months of imprisonment on Count IV, to be served consecutively to his sentence as to Counts I, II, and III; three years of supervised release as to Counts I, II, and III, and four years of supervised release as to Count IV, all terms of supervised release to be served concurrently; a special assessment of $400; and a fine of $1000.  (Docket No. 42.)  Waters did not appeal his judgment of conviction or sentence.

Waters filed the instant Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255 on January 9, 2013.  The Motion asserts three claims for relief, all of which assert that Waters's attorney provided ineffective assistance for:  (1) rejecting a formal plea offer made by the Commonwealth of Pennsylvania without first consulting with Waters; (2) failing to accept the plea offer after Waters made it clear that he wished to accept the plea offer; and (3) failing to

file a motion to dismiss Indictment No. 11-100 based on alleged violations of Waters's constitutional rights. We appointed Kathryn Cacciamani, Esquire to represent Waters on March 27, 2013, gave counsel for Waters and the Government the opportunity to file supplemental memoranda of law, and held an evidentiary hearing on June 5, 2013 (the "Hearing").

## II.    LEGAL STANDARD

Waters has moved for relief pursuant to 28 U.S.C. § 2255, which provides as follows:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a). "'Section 2255 does not provide habeas petitioners with a panacea for all alleged trial or sentencing errors.'" United States v. Perkins, Crim. A. No. 03-303, Civ. A. No. 07-3371, 2008 WL 399336, at *1 (E.D. Pa. Feb. 14, 2008) (quoting United States v. Rishell, Crim. A. No. 97-294-1, Civ. A. No. 01-486, 2002 WL 4638, at *1 (E.D. Pa. Dec. 21, 2001)). In order to prevail on a Section 2255 motion, the movant's claimed errors of law must be constitutional, jurisdictional, "a fundamental defect which inherently results in a complete miscarriage of justice," or "an omission inconsistent with the rudimentary demands of fair procedure." Hill v. United States, 368 U.S. 424, 428 (1962).

Waters's claims are all based on the alleged ineffective assistance of his attorney, Arnold Joseph, Esquire, who represented Waters in connection with both the state and federal charges against him. In order to prevail on a claim for ineffective assistance of counsel, a criminal defendant must demonstrate both that (1) his attorney's performance was deficient, *i.e.*, that the performance was unreasonable under prevailing professional standards, and (2) that he was

prejudiced by his attorney's performance. Strickland v. Washington, 466 U.S. 668, 687–88, 690-92 (1984). Prejudice is proven if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. Consequently, counsel cannot be found to be ineffective for failing to pursue a meritless claim. See United States v. Sanders, 165 F.3d 248, 253 (3d Cir. 1999) ("There can be no Sixth Amendment deprivation of effective counsel based on an attorney's failure to raise a meritless argument." (citations omitted)); see also Parrish v. Fulcomer, 150 F.3d 326, 328 (3d Cir. 1998).

## III. DISCUSSION

### A.    Counsel's Alleged Ineffectiveness in State Court

Waters's first two claims for relief pertain to Joseph's alleged failure to timely communicate with Waters regarding a plea offer which Waters claims was made by the Philadelphia District Attorney's Office, and Joseph's failure to accept that plea offer before Waters was indicted by the federal grand jury and before the Commonwealth *nolle prosequied* its charges against him. In Missouri v. Frye, 132 S. Ct. 1399 (2012), the Supreme Court held that:

> As a general rule, defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused. . . . When defense counsel allowed the offer to expire without advising the defendant or allowing him to consider it, defense counsel did not render the effective assistance the Constitution requires.

Id. at 1408. The Supreme Court explained that, in order to show prejudice "where a plea offer has lapsed or been rejected because of counsel's deficient performance," the defendant must demonstrate a reasonable probability that he would have accepted the plea offer, that "the plea would have been entered without the prosecution cancelling it[,]" and that it would have resulted in "a plea to a lesser charge or a sentence of less prison time." Id. at 1409 (citation omitted).

Waters maintains that the Philadelphia District Attorney made a plea offer to Joseph while he (Waters) was waiting outside the courtroom after his April 7, 2010 arraignment in the Philadelphia County Court of Common Pleas. (6/5/13 Hr'g Tr. at 64-65, 71.) When Joseph emerged from the courtroom, he told Waters that the District Attorney had made a plea offer of two to four years imprisonment, but he advised Waters not to take the offer because he wanted to wait for a better offer. (Id. at 66.) Waters decided to accept the plea offer after discussing it with his parents, and instructed Joseph to accept the plea offer the next time they spoke. (Id. at 66-67.) Rather than accept the offer, Joseph again advised Waters to wait. (Id.) Waters repeatedly instructed Joseph to accept the offer until he was arrested on the federal indictment. (Id. at 67-68.)

### 1. The appropriate procedure for addressing Waters's claims

The Government argues that Waters's claims of ineffective assistance of counsel with respect to the state court plea offer must be denied because § 2255 is not the appropriate mechanism for addressing a challenge to an attorney's ineffective assistance in connection with a state court offense. Specifically, the Government contends that Waters cannot challenge Joseph's purported ineffective assistance with respect to the Philadelphia District Attorney's alleged plea offer in this proceeding because the challenged conduct is not related to Waters's federal conviction and sentence.

The right to the effective assistance of counsel derives from the Sixth Amendment, which "provides that the accused shall have the assistance of counsel in all criminal prosecutions." Frye, 132 S. Ct. at 1404 (citing Strickland, 466 U.S. at 686). The Supreme Court has explained that the right to counsel guaranteed by the Sixth Amendment is "offense specific. It cannot be invoked once for all future prosecutions, for it does not attach until a prosecution is commenced,

6

that is, 'at or after the initiation of adversary judicial criminal proceedings -- whether by way of formal charge, preliminary hearing, indictment, information, or arraignment.'" McNeil v. Wisconsin, 501 U.S. 171, 175 (1991) (quoting United States v. Gouveia, 467 U.S. 180, 188 (1984)); see also Moran v. Burbine, 475 U.S. 412, 431 (1986) ("[T]he Sixth Amendment right to counsel does not attach until after the initiation of formal charges."). Thus, once the Sixth Amendment right to counsel attaches, it encompasses only the charged offenses and "offenses that, even if not formally charged, would be considered the same offense under the Blockburger test." Texas v. Cobb, 532 U.S. 162, 173 (2001) (referring to Blockburger v. United States, 284 U.S. 299 (1932)). In Blockburger, the Supreme Court explained that the test to be used "to determine whether there are two offenses or only one" is "whether each provision requires proof of a fact which the other one does not." Blockburger, 284 U.S. at 304. The Blockburger test also applies to the determination of whether two offenses are the same offense for purposes of the Fifth Amendment Double Jeopardy Clause. See Brown v. Ohio, 432 U.S. 161, 166-68 (1977).

The Government maintains that, while the charges brought against Waters by the Commonwealth of Pennsylvania arose out of the same conduct as the charges brought against him by the United States of America, federal and state prosecutions for the same criminal conduct always constitute separate offenses for Sixth Amendment purposes. Thus, the Government contends that Waters's Sixth Amendment right to counsel in this proceeding had not attached at the time of his state court arraignment, when he alleges the plea offer was made, and Joseph's alleged ineffectiveness with respect to that plea offer cannot be challenged in connection with this proceeding. The Government relies on United States v. Avants, 278 F.3d 510 (5th Cir. 2002), in which the United States Court of Appeals for the Fifth Circuit held that

state and federal offenses are separate offenses for purposes of the Sixth Amendment right to counsel, even if they would qualify as the same offense under the <u>Blockburger</u> test because their elements are identical. <u>Id.</u> at 516.

In <u>Avants</u>, the Fifth Circuit relied on the "dual sovereignty doctrine," pursuant to which "a defendant's conduct in violation of the laws of two separate sovereigns constitutes two distinct offenses for purposes of the Double Jeopardy Clause. <u>Id.</u> (citing <u>Heath v. Alabama</u>, 474 U.S. 82, 88-93 (1985); and <u>Abbate v. United States</u>, 359 U.S. 187, 193-94 (1959)). The Supreme Court has explained that the dual sovereignty doctrine "is founded on the common-law conception of crime as an offense against the sovereignty of the government. When a defendant in a single act violates the 'peace and dignity' of two sovereigns by breaking the laws of each, he has committed two distinct 'offences.'" <u>Heath</u>, 474 U.S. 82, 88 (quoting <u>United States v. Lanza</u>, 260 U.S. 377, 382 (1922)). The states are considered to be "separate sovereigns with respect to the Federal Government because each State's power to prosecute is derived from its own 'inherent sovereignty,' not from the Federal Government." <u>Id.</u> at 89 (quoting <u>United States v. Wheeler</u>, 435 U.S. 313, 320 n.14 (1978); and citing <u>Abbate</u>, 359 U.S. at 193-94, and <u>Lanza</u>, 260 U.S. at 382). The Fifth Circuit based its conclusion that the dual sovereignty doctrine, rather than the <u>Blockburger</u> test, applies to the determination of whether state and federal offenses are identical for purposes of the Sixth Amendment right to counsel on the Supreme Court's announcement in <u>Cobb</u>, that "[w]e see no constitutional difference between the meaning of the term 'offense' in the contexts of double jeopardy and of the right to counsel." <u>Cobb</u>, 532 U.S. at 173. As the Fifth Circuit explained:

> By concluding without limitation that the term "offense" has the same meaning under the Sixth Amendment as it does under the Double Jeopardy Clause, the Court effectively foreclosed any argument that the dual sovereignty doctrine does not inform the definition of "offense" under the Sixth Amendment. Stated

differently, the Supreme Court has incorporated double jeopardy analysis, including the dual sovereignty doctrine, into its Sixth Amendment jurisprudence.

Avants, 278 F.3d 517. The United States Court of Appeals for the First Circuit has "adopt[ed] the reasoning of the Fifth Circuit in Avants," and has concluded "that the dual sovereignty doctrine applies for the purposes of defining what constitutes the same offense in the Sixth Amendment right to counsel context." United States v. Coker, 433 F.3d 39, 44 (1st Cir. 2005).

In United States v. Alvarado, 440 F.3d 191 (6th Cir. 2006), the United States Court of Appeals for the Sixth Circuit also concluded that the dual sovereignty doctrine, rather than the Blockburger test, should be applied to determine when the Sixth Amendment right to counsel attaches to a federal offense if the federal charges are brought subsequent to state charges arising from the same conduct. The Alvarado Court, like the Avants Court, based its conclusion on the Supreme Court's statement in Cobb, that "there was 'no constitutional difference between the meaning of the term "offense" in the contexts of double jeopardy and of the right to counsel,'" even though the Cobb Court applied the Blockburger test rather than the dual sovereignty doctrine. Id. at 196 (quoting Cobb, 532 U.S. at 173.) The Alvarado court explained its reasoning as follows:

> Because Cobb clearly indicates that the definition of offense is the same in the right to counsel and double jeopardy contexts, 532 U.S. at 173, the dual sovereignty doctrine has equal application in both. Indeed, if dual sovereignty is a central feature of double jeopardy analysis, it cannot help but be a central feature of offense-specificity analysis since the two after Cobb are constitutionally one and the same . . . .

> Any other conclusion would be an affront to both state and federal sovereignty. "As every schoolchild learns, our Constitution establishes a system of dual sovereignty between the States and the Federal Government." Gregory v. Ashcroft, 501 U.S. 452, 457 (1991). This fundamental structural precept is deeply-ingrained, and is surely most salient in the realm most central to sovereignty itself, to wit, the ability to protect citizens and punish wrongdoers. "Foremost among the prerogatives of sovereignty is the power to create and enforce a criminal code." Heath, 474 U.S. at 93. Because crime is traditionally

9

> viewed "as an offense against the sovereignty of the government," id. at 88, "the power of punishment appertains to sovereignty, and may be exercised, whenever the sovereign has a right to act, as incidental to his constitutional powers," McCulloch v. Maryland, 17 U.S. (4 Wheat.) 316, 418 (1819).

Id. at 196-97.

The Eleventh Circuit Court of Appeals has also considered this issue and held that the dual sovereignty doctrine applies to the Sixth Amendment right to counsel. United States v. Burgest, 519 F.3d 1307, 1308 (11th Cir. 2008). In Burgest, the defendant's Sixth Amendment right to counsel had attached in connection with a state court drug offense before he was arrested on federal drug charges. Id. The Eleventh Circuit explained that, "[b]ecause the Sixth Amendment right to counsel is offense specific, Burgest's prior invocation of his right to counsel for the charged state offense did not attach to his uncharged federal drug offenses if the federal offenses are separate offenses from the state drug offense." Id. at 1310. "We hold that where conduct violates laws of separate sovereigns, the offenses are distinct for purposes of the Sixth Amendment right to counsel. Accordingly, Burgest's right to counsel did not attach to his federal charges at the time [of his federal arrest]." Id.

Waters argues that we should not apply the dual sovereignty doctrine favored by the First, Fifth, Sixth and Eleventh Circuits, and instead maintains that we should apply the Blockburger test. Waters relies on United States v. Red Bird, 287 F.3d 709 (8th Cir. 2002), and United States v. Mills, 412 F.3d 325 (2d Cir. 2005). In Red Bird, the defendant was originally charged with rape in the Rosebud Sioux Tribal Court, which appointed an attorney for him. Red Bird, 287 F.3d at 711. Two months later, tribal authorities notified the FBI that Red Bird had allegedly committed a rape.[1] (Id.) An FBI agent, assisted by a Rosebud Sioux Tribal Investigator,

---

[1] Rape is subject to federal jurisdiction when it is perpetrated by an Indian in Indian Country. Redbird, 287 F.3d at 711 (citing 18 U.S.C. § 1153).

located Red Bird and interviewed him outside the presence of his attorney, even though both the FBI Agent and the Tribal Investigator, who was present during the interview, knew that counsel had been appointed for Red Bird in connection with the tribal charges. Id. at 711-12. The FBI Agent read Red Bird his Miranda rights and Red Bird signed a waiver. Id. at 712. Six months later, Red Bird was indicted on federal charges of aggravated sexual abuse arising from the same offense as the tribal rape charge and filed a motion in federal court to suppress his statement to the FBI Agent on the ground that his statement was taken in violation of his Sixth Amendment right to counsel. The district court "found that the federal and tribal charges were identical, that [the FBI Agent] and tribal authorities were working in tandem, and that [the FBI Agent] knew counsel had been appointed to Red Bird at the time of the rape charge." Id. The district court granted the motion to suppress based upon these findings, holding that "Red Bird's Sixth Amendment right to counsel attached when he was arraigned on the rape charges in tribal court and that the subsequent interview violated Red Bird's Sixth Amendment right to counsel." Id. The Government appealed, arguing based on the dual sovereignty doctrine that "the federal and tribal indictments for the same rape charge two separate offenses because the rape violated the laws of two sovereigns." Id. at 714-15.

The Eighth Circuit affirmed, using the Blockburger test to determine that the tribal and federal offenses were one and the same: "the tribal rape charge has 'identical essential elements when compared with the later federal charges filed.' Therefore, we hold that pursuant to the [Blockburger test], the federal and tribal complaints charge the same offense for Sixth Amendment purposes." Id. at 715 (quoting United States v. Red Bird, 146 F. Supp. 2d 993, 999 (D.S.D. 2001)). The Eighth Circuit rejected the dual sovereignty doctrine approach in favor of the Blockburger test due to the unique nature of the tribal legal system and the fact that the

federal and tribal authorities worked together in their prosecution of Red Bird: "We do not believe that it is appropriate to fully rely on double jeopardy analysis here. . . . [T]he tribal charge in this case initiated the federal investigation and proceedings, and the tribe and the U.S. worked in tandem to investigate the rape. Furthermore, tribal sovereignty is 'unique and limited' in character." Id. at 715 (quoting United States v. Wheeler, 435 U.S. 313, 323 (1978)). See also Wheeler, 435 U.S. at 323 (stating that the "sovereignty that the Indian tribes retain is of a unique and limited character.")

In United States v. Mills, 412 F.3d 325 (2d Cir. 2005), the Second Circuit similarly declined to apply the dual sovereignty doctrine when deciding whether state and federal offenses arising from the same conduct constitute the same offense. The day after Mills was charged with a state gun offense, and while he was incarcerated on that state charge, he was interviewed without counsel by detectives who were investigating the unrelated shooting of a police officer. Mills, 412 F.3d at 326. Several months later, Mills was charged with unlawful gun possession under federal law and prosecutors sought to use his statement to the detectives in his federal trial. Id. Mills filed a motion to suppress that statement on the ground that it had been "taken in violation of his right to counsel." Id. The district court granted the motion, concluding that "because Mills's right to counsel had attached at the time of the interview, state officials had violated his Sixth Amendment rights." Id. The Government appealed, "arguing that despite the identity of elements of the federal and state gun charges, they are not the same offense for purposes of the Sixth Amendment because they were prosecuted by separate sovereigns, and therefore Mills's Sixth Amendment right to counsel did not attach to the federal charge." Id. at 326-27.

The Second Circuit, utilizing the Blockburger test, affirmed the district court, holding

that: "the statements obtained in violation of Mills's right to counsel as to the state proceedings must also be suppressed in the federal proceedings because the two proceedings were for the 'same offense,' each requiring proof of identical essential elements." Id. at 327 (citing Cobb, 532 U.S. at 162; and Blockburger, 284 U.S. at 299). In reaching its conclusion, the Second Circuit rejected the dual sovereignty doctrine approach taken by the Fifth Circuit in Avants. Id. at 330 n.2 ("We reject the government's invitation to follow the Fifth Circuit's lead in United States v. Avants, 278 F.3d 510 (5th Cir. 2002), cert. denied, 536 U.S. 968 (2002)."). The Second Circuit later limited its holding in Mills "to situations in which federal prosecutors seek to admit evidence obtained by state and local prosecutors in violation of the Sixth Amendment." United States v. Worjloh, 546 F.3d 104, 109 (2d Cir. 2008). In all other cases, the Second Circuit has indicated that it will utilize the dual sovereignty doctrine. Id. (relying on Avants, 278 F.3d at 517; and citing Coker, 433 F.3d at 44.)

The Third Circuit has not addressed whether the dual sovereignty doctrine applies to the Sixth Amendment right to counsel and, therefore, we look to the Courts of Appeals that have addressed this issue for guidance. See United States v. Espinosa, Crim. A. No. 07-482, 2008 WL 5397544, at *9 (E.D. Pa. Dec. 24, 2008). The circumstances of this case are entirely unlike the circumstances of both Red Bird and Mills. There is no evidence on the record of this case that the federal and state prosecutions of Waters were inextricably intertwined, as they were in Red Bird. This case also does not involve the "unique and limited" character of tribal sovereignty. Red Bird, 287 F.3d at 715 (quoting Wheeler, 435 U.S. at 323). Nor is this case similar to Mills, where federal prosecutors sought to utilize evidence that was obtained by state or local investigators in violation of the Sixth Amendment. Accordingly, we conclude that the dual sovereignty doctrine applies to our determination of whether Waters's right to the effective

assistance of counsel in connection with the charges brought against him by the federal government attached when he was charged with violations of state law by the Commonwealth of Pennsylvania. See Alvarado, 440 F.3d at 198; Avants, 278 F.3d at 512-13; Coker, 433 F.3d at 44; Burgest, 519 F.3d at 1310. Since the charges brought against Waters by the Commonwealth of Pennsylvania and by the federal government were brought by two different sovereigns, we thus conclude that they are different offenses for purposes of the Sixth Amendment right to counsel. As the Sixth Amendment right to counsel is offense specific, see McNeil, 501 U.S. at 175, we conclude that Waters's Sixth Amendment right to the effective assistance of counsel did not attach to the federal charges asserted against him in this proceeding until he was indicted by the federal grand jury in early 2011. Id. The Motion is, accordingly, denied with respect to Waters's claims of ineffective assistance of counsel regarding the alleged state court plea offer because those claims are not made in connection with Waters's federal offenses, conviction, and sentence.

2.     The existence of a formal plea offer in state court

Even if Waters were able to obtain relief pursuant to § 2255 in connection with his counsel's alleged ineffectiveness with respect to his state court offenses, we would nonetheless deny the Motion with respect to his first two claims for relief because Waters has not established that the Philadelphia District Attorney's office made a formal plea offer to him. As we discussed *supra*, the Supreme Court has determined that a defense attorney who fails to communicate a formal plea offer to his client is ineffective if that plea offer would have been favorable to the defendant. Frye, 132 S. Ct. at 1408. Consequently, the existence of a formal plea offer is a crucial element of Waters's claim. While we have been unable to find any authority defining the requisite elements of a formal plea offer, it is clear that an oral discussion of the sentencing range

for a possible plea agreement that does not include an agreement on the charges to which the defendant will plead guilty and the facts that he will admit, does not constitute a formal plea offer. See Enright v. United States, 347 F. Supp. 2d 159, 165 (D.N.J. 2004).

During the June 5, 2013 Hearing, Dawn Holtz, Esquire, an Assistant District Attorney for the City of Philadelphia, testified regarding the alleged plea offer.[2] (6/5/13 Hr'g Tr. at 5.) In March and April 2010, she was assigned to the Major Trials Unit and was responsible for making plea offers on every Major Trial Unit case, unless that case was specially assigned. (Id.) Holtz believes, based on the nature of the charges against Waters, that his case would have come through her for the purpose of making a plea offer. (Id. at 11.) Holtz testified that she has no independent recollection of whether she made a plea offer to Waters. (Id. at 7-8.) However, she was able to produce Waters's state court file at the Hearing. (Id. at 6-7.)

Holtz usually did not receive a defendant's file until the week after the arraignment, which in Waters's case was held on April 7, 2010. (6/5/13 Hr'g Tr. at 10; Gov't Ex. 1.) See also Commonwealth v. Waters, No. CP-51-CR-0003471-2010, docket. At that time, Holtz would normally review the file and decide whether to make a plea offer to the defendant. (6/5/13 Hr'g Tr. at 8.) When she decided to make an offer to a defendant, she would hand-write the offer and retain a copy in the defendant's file. (Id. at 8, 1.) She would then either mail a copy of the offer to the defense attorney, or personally turn the offer over to the defense attorney with discovery during a court listing. (Id. at 8, 13.) Waters's file does not contain a copy of a written plea offer. (Id. at 8-9.)

Holtz testified that she placed a pink sticker on the outside of Water's file that says "'[f]ive years gun and drug.'" (Id. at 12.) She wrote that message on the files of cases that

---

[2]Waters also testified as to his knowledge of the alleged plea offer. We have summarized his testimony at page 6, *supra*.

involved five-year gun and drug mandatory minimum sentences.  (Id.)  As a result of those mandatory sentences, Waters was facing a mandatory minimum sentence of five to ten years in state prison.  (Id. at 16-17.)  Holtz further testified that she would not have made an offer as low as two to four years in a case with a five to ten year mandatory minimum, even if the defendant had no prior criminal record.  (Id. at 17-18.)

Since Holtz would not have received Waters's file until after April 7, 2010, any plea offer would have been made after April 7, 2010.  (Id. at 27.)  There were two pretrial listings for Waters's case.  (Id. at 21.)  The first was on May 13, 2010 in Courtroom 1103, before Judge Shreeves-Johns.  (Id. at 11, 21; Gov't Ex. 1.)  Courtroom 1103 was a pretrial room where offers would be made and discovery exchanged.  (6/5/13 Hr'g Tr. at 11.)  The listing was attended by Waters and Assistant District Attorney McDermott.  (6/5/13 Hr'g Tr. at 22, Gov't Ex. 1.)  Holtz testified that, if she had made an offer to Joseph after Waters's arraignment date of April 7, 2010, it would not have been possible for him to accept the offer on May 13, 2010, because Joseph did not appear in Courtroom 1103 on that date.  (6/5/13 Hr'g Tr. at 18.)  Joseph was on trial somewhere else on May 13, 2010, and the pretrial listing was continued until May 20, 2010.  (Id. at 21-22; Gov't Ex. 1.)  See also Commonwealth v. Waters, No. CP-51-CR-0003471-2010, docket.  Judge Shreeves-Johns was not sitting on May 20, 2010, so no Assistant District Attorney attended the pretrial listing on that day.  (6/5/15 Hr'g Tr. at 28.)  Instead, a paralegal with the District Attorney's Office went to the pretrial listing and met with Joseph.  (Id.)  Waters's file contains a note dated May 20, 2010 that states that the paralegal was instructed to tell Joseph that the District Attorney's office would not make a plea offer to Waters.  (Id.)

Holtz believes that no plea offer was personally given to Joseph in this case.  Since she did not receive the file until after April 7, 2010, and the file contains a note dated May 20, 2010

that states that no plea offer would be made to Waters, a plea offer could only have been made to Waters between April 7 and May 20, 2010. (<u>Id.</u> at 30-31.) The only pretrial listing for this case between April 7 and May 20, 2010, at which Joseph could have been personally given a written offer, was held on May 13, 2010, and Joseph did not attend that listing. (<u>Id.</u> at 31-32.) Consequently, the only way that Holtz could have made a plea offer to Joseph would have been by mail. (<u>Id.</u> at 32-33.) There is nothing in Waters's file that supports the conclusion that Holtz mailed a formal plea offer to Joseph. (<u>Id.</u> at 33.)

Joseph, who also testified during the June 5, 2013 Hearing, is a criminal defense attorney who represented Waters beginning in 2010. (<u>Id.</u> at 37.) Joseph testified that the Philadelphia District Attorney's Office made a plea offer to Waters for approximately half of the five year mandatory minimum sentence. (<u>Id.</u> at 38, 57-58.) Joseph does not recall who in the District Attorney's Office made that offer. (<u>Id.</u> at 58.) Joseph does not recall receiving anything in writing from the District Attorney's Office documenting the offer and he does not believe that the District Attorney's Office made a written plea offer. (<u>Id.</u> at 39, 59.) Joseph does not specifically recall when he received the plea offer, but believes that it may have been on April 7, 2010. (<u>Id.</u> at 41, 60.) Joseph further testified that he told Waters about the offer the same day that he received it and Waters agreed that it did not make sense to take the offer at that time because he could file a viable motion to suppress. (<u>Id.</u> at 42-44, 58-59.)

Waters has the burden of proving that a formal plea offer was made by the District Attorney's Office, that the plea offer was favorable to him, and that he was prejudiced by his attorney's failure to accept the plea offer on his behalf. <u>See</u> <u>United States v. Penwell</u>, Crim. A. No. 08-387, Civ. A. No. 13-489, 2013 WL 1873093, at *1 (W.D. Pa. May 3, 2013) ("'A person seeking to vacate his conviction bears the burden of proof upon each ground presented for

relief.'" (quoting <u>United States v. Keyes</u>, Crim. A. No. 93–22–2 1997 WL 539688, at *1 (E.D. Pa. Aug. 11, 1997))).  Although Joseph and Waters may have believed that an individual with the Philadelphia District Attorney's Office made an oral plea offer to Joseph on the day of Waters's arraignment, April 7, 2010, Holtz, the Assistant District Attorney with the authority to make a plea offer to Waters, had not yet received Waters's file and could not have authorized such a plea offer.  (6/5/13 Hr'g Tr. at 10, 38-39, 57-59, 66.)  Moreover, the Philadelphia District Attorney's Office only made written plea offers and there is no evidence that a written plea offer was given to Joseph in this case.  (<u>Id.</u> at 39, 59.)  We conclude, therefore, that no formal plea offer was made to Waters by the Philadelphia District Attorney's Office in connection with the state charges arising from Waters's March 10, 2010 arrest.[3]  Since no formal plea offer was made, Joseph could not have been ineffective for failing to accept it on Waters's behalf.  Consequently, even if a defendant could obtain relief pursuant to § 2255 on the ground that his counsel was ineffective in connection with state court offenses, we would deny Waters's claim of ineffective assistance of counsel in connection with his alleged state court plea offer because he has failed to satisfy his burden of establishing that the Philadelphia District Attorney's Office made a formal plea offer to him.

B.     Counsel's Failure to File a Motion to Dismiss the Indictment

Waters argues in his third claim for relief that Joseph was ineffective for failing to file a motion to dismiss Indictment No. 11-100 on the ground that there was no probable cause for his

---

[3]We acknowledge that Waters's file contains an undated note that states "[p]lease rescind offer and return file to Dawn, possible Federal indictment."  (6/5/13 Hr'g Tr. at 15-16.)  Holtz was not asked during the Hearing to explain the meaning of this note.  (<u>Id.</u>)  Nonetheless, while this note supports the possibility that someone associated with the Philadelphia District Attorney's Office may have discussed a possible plea with Joseph, there is no evidence of record that Holtz, the only Assistant District Attorney with the authority to make a formal plea offer to a defendant in a major case in April 2010, made a formal plea offer to Waters.

arrest and the subsequent search of his person. Waters relies on Bailey v. United States, --U.S.--, 133 S. Ct. 1031 (2013). In Bailey, the Supreme Court considered "whether Michigan v. Summers[, 452 U.S. 69 (1981),] justifies the detention of occupants beyond the immediate vicinity of the premises covered by a search warrant." Bailey, 133 S. Ct. at 1037.

The Fourth Amendment provides that "'[t]he right of the people to be secure in their persons . . . against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause . . . . ." Id. at 1037 (quoting U.S. Const. amend. IV.) Generally, a seizure is reasonable under the Fourth Amendment "'only if based on probable cause' to believe that the individual has committed a crime." Id. (quoting Dunaway v. New York, 442 U.S. 200, 213 (1979)). In Summers, the Supreme Court determined that a police officer "executing a search warrant" could "detain the occupants of the premises while a proper search is conducted" even if the police officer did not have probable cause to arrest the occupants. Bailey, 133 S. Ct. at 1037 (quoting Summers, 452 U.S. at 705). Bailey was arrested a mile from his apartment by police officers who were watching his apartment in preparation for executing a search warrant and who followed his car after they saw him drive away from the apartment. Id. at 1036. Prior to Bailey's trial on drug and firearms charges, he moved to suppress evidence found on his person and statements he made at the time of his arrest. Id. The district court denied the motion, holding "that Bailey's detention was permissible under [Summers], as a detention incident to the execution of a search warrant." Id. at 1037. The district court's holding was affirmed on appeal. Id. The Supreme Court reversed, holding that:

> Detentions incident to the execution of a search warrant are reasonable under the Fourth Amendment because the limited intrusion on personal liberty is outweighed by the special law enforcement interests at stake. Once an individual has left the immediate vicinity of a premises to be searched, however, detentions must be justified by some other rationale.

Id. at 1042-43.  Despite his reliance on <u>Bailey</u>, Waters was not arrested in connection with the Strike Force Officer's execution of the search warrant at his home.  Rather, Waters was arrested hours earlier, after Strike Force Officers observed him selling crack cocaine to three individuals from his home.  (6/7/11 Hr'g Tr. at 35-36, 50.)  <u>Bailey</u> thus does not apply to him.

During the June 5, 2013 Hearing, Joseph was asked why he did not move to dismiss Indictment No. 11-100 on the ground that Waters was stopped by the police and arrested without probable cause.  (6/5/13 Hr'g Tr. at 55.)  Joseph explained that he believed that such a motion would have been meritless because the Strike Force Officers said that they had observed Waters outside of his house making illicit transactions.  (<u>Id.</u> at 56.)

Philadelphia Police Sergeant Edward Hayes testified during the June 7, 2011 Hearing held with respect to Waters's Motion to Suppress, that officers with the Narcotics Strike Force South, who had been conducting surveillance on Waters's street, arrested Waters on March 10, 2010 after they observed him selling crack cocaine to three individuals from his home.  (6/7/11 Hr'g Tr. at 30, 32-35, 50.)  Before they arrested Waters, the officers confirmed their observations by stopping two of those individuals after they left Waters's home and seizing packets of crack cocaine from each of them.  (6/7/11 Hr'g Tr. at 35; Search Warrant at 2.)  Probable cause for an arrest exists "'where the facts and circumstances within the arresting officer's knowledge are sufficient to warrant a reasonable person to believe an offense had been committed.'"  <u>United States v. McMillion</u>, 472 F. App'x 138, 141 (3d Cir. 2012) (quoting <u>United States v. McGlory</u>, 968 F.2d 309, 342 (3d Cir. 1992)).  We conclude that a reasonable police officer who was aware of these facts and circumstances would believe that an offense had been committed and, consequently, that there was probable cause for Waters's arrest and the search of his person that was conducted incident to his arrest.  Joseph was, accordingly, correct in his belief that a motion

to dismiss Indictment No. 11-100 for lack of probable cause for Waters's arrest and subsequent search would have been meritless. Since counsel cannot be found to be ineffective for failing to pursue a meritless claim, we deny Waters's claim that Joseph was ineffective for failing to file a motion to dismiss Indictment No. 11-100 on the ground that the police lacked probable cause for his arrest and the subsequent search of his person. See Sanders, 165 F.3d at 253.

## IV.    CONCLUSION

For the foregoing reasons, Waters's Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255 is denied in its entirety. We conclude that Waters has failed to make a substantial showing of the denial of a constitutional right, and, consequently, that there is no basis for the issuance of a certificate of appealability. An appropriate order follows.


BY THE COURT:

/s/ John R. Padova

_____

John R. Padova, J.